[Crim. No. 5799.   In Bank.   Feb. 7, 1956.]

THE PEOPLE, Respondent, v. EUGENE AUGUSTINE MORLOCK, Appellant.

Howard A. Muhleman, under appointment by the Supreme Court, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Respondent.

CARTER, J.—This is an automatic appeal (Pen. Code, § 1239) from a judgment of the Superior Court of San Diego County imposing the death penalty.

Defendant Eugene Augustine Morlock was charged with the murder of one Annie Morales; he was also charged with her rape and with assault with a deadly weapon with intent to murder George Piepa. He pleaded not guilty and not guilty by reason of insanity to all three charges. After trial by jury he was found guilty as charged and sane at the time of the commission of the offenses. A motion for a new trial was made and denied and a judgment imposing the death penalty was rendered.

There is little or no dispute as to the facts. On May 11, 1955, Gus Pico, George Piepa, Frank Cuervas, defendant's

uncle, and Annie Morales were drinking together in a two-room dwelling on the Rincon Indian Reservation. At approximately 7 o'clock in the evening, defendant in the company of Lindy Parcel (a codefendant) broke down the door of the house with a fence post defendant had picked up outside and which he used as a battering ram. He then asked Piepa for a drink while still holding the post in a threatening manner. Piepa informed him there was nothing to drink, whereupon defendant struck Piepa with his fists knocking him to the floor. The record disclosed that defendant was 6 feet 4 inches tall and weighed over 200 pounds. Annie Morales, the common-law wife of Piepa, came through the opening from the next room and may have started to attack the defendant. He thereupon struck her in the face with his fists knocking her to the floor where he then kicked her three or four times in the face with his steel-toed boots. He left her lying on her back on the floor of the bedroom where she fell and went back into the kitchen where he struck Piepa with the flat side of an axe he had found in the house and then kicked him. Parcel took the axe away from him, but defendant found a broken bread knife with which he proceeded to cut Piepa. The knife was taken from him by Parcel. Defendant then went into the bedroom where he had sexual intercourse with Annie Morales who had not moved since defendant had beaten and kicked her. Frank Cuervas then, at defendant's invitation, had intercourse with the unconscious woman. Defendant and Frank then covered the woman with a blanket and left after taking a bottle of wine from the house. Parcel testified that before entering the house defendant said he was going to "clobber" Piepa because Piepa had beaten his uncle.

Annie Morales' face was crushed and her lips lacerated; she suffered a fracture of the skull. Medical testimony was to the effect that despite her severe injuries she could have lived from one-half an hour to several hours after the wounds were inflicted. Piepa, although severely beaten, recovered and testified at the trial. Defendant did not take the stand in his own defense. A transcription of answers by defendant to questions asked him by a member of the sheriff's office was admitted in evidence. There is no contention that the answers were not freely given. The questions and answers thereto fully corroborate the facts heretofore set forth.

The People argue that defendant was guilty of first degree murder in that the death of Annie Morales occurred in the commission of (1) burglary; (2) rape; and (3) mayhem.

Defendant contends that the evidence is insufficient to establish that the murder occurred in the perpetration of rape, burglary, or mayhem; that the district attorney was guilty of prejudicial misconduct; that the court committed prejudicial error in giving certain instructions and in failing to give an instruction proposed by defendant.

Section 459 of the Penal Code provides that "Every person who enters any house, room . . . with intent to commit grand or petit larceny *or any felony* is guilty of burglary." (Emphasis added.) Section 245 of the Penal Code provides that "Every person who commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury is . . ." guilty of a felony. The undisputed evidence shows that defendant broke into the house of Piepa with a fence post with the avowed intent to "clobber" Piepa. Section 460 of the Penal Code provides that any person armed with a deadly weapon, "or who while in the commission of such burglary arms himself with a deadly weapon, or who while in the commission of such burglary assaults any person" is guilty of burglary of the first degree. The codefendant, Parcel, testified as to defendant's intent to assault Piepa before they arrived at Peipa's house. He and defendant (in the interrogatory) both stated that defendant armed himself with the fence post prior to reaching Piepa's house. ▇ In a prosecution such as this, the intent to commit a felony after breaking down the door and entering may be inferred from the facts and circumstances disclosed by the evidence (*People* v. *Franklin,* 106 Cal.App.2d 528 [235 P.2d 402]) which includes defendant's threat to clobber Piepa, his use of the fence post, and his conduct upon entering the house. ▇ A deadly weapon is one likely to produce death or great bodily injury (*People* v. *Fuqua,* 58 Cal. 245; *People* v. *Leyba,* 74 Cal. 407 [16 P. 200]). In *People* v. *Cook,* 15 Cal.2d 507, 517 [102 P.2d 752], the deceased met her death by being struck with a piece of two-by-four about 2 feet long. The court in the Cook case in holding that the two-by-four was a deadly weapon quoted from *People* v. *Raleigh,* 128 Cal.App. 105, 108, 110 [16 P.2d 752], as follows: "When it appears . . . that [such] an instrumentality . . . is capable of being used in a 'dangerous or deadly' manner, and it may be fairly inferred from the evidence that its possessor intended on a particular occasion *to use it as a weapon* should the circumstances require, we believe that its character as a 'dangerous or deadly weapon' may be

thus established, at least for the purposes of that occasion.''
The fence post involved here measured 4 feet 11 inches in length, was 4 inches by 4 inches square and weighed 10 pounds, and therefore comes well within the definition of a ''deadly weapon'' as defined in the Raleigh case, *supra*. Defendant contends that if this was a burglary, the crime was complete upon the entry; that Annie Morales was, therefore, not killed in the perpetration of burglary but was killed in the perpetration of an assault upon Piepa. Defendant's contentions are without merit. The statute (Pen. Code, § 189) provides that all murder which is committed in the perpetration of or attempt to perpetrate burglary is murder of the first degree. As we have heretofore pointed out burglary is committed when a person enters any house ''with intent to commit . . . any felony'' (Pen. Code, § 459) and that section 245 of the Penal Code provides that a person is guilty of a felony when he commits an assault upon the person of another with a deadly weapon ''or by any means of force likely to produce great bodily injury.'' It may justifiably be inferred from the evidence here that defendant entered the house of Piepa with intent to assault him with the fence post with which he had armed himself prior to the entry and that such fence post was a deadly weapon within the meaning of the term. Defendant relies upon the rule set forth in *People* v. *Carnine*, 41 Cal.2d 384 [260 P.2d 16], where, in reversing the judgment of conviction, we held that an instruction that a killing was not first degree murder in the perpetration of robbery if the thought of taking the money from the victim occurred only after the termination of the attack, should have been given. Defendant's argument is, apparently, that he did not intend to assault Annie Morales when he entered the house and that he formed the intent to steal the bottle of wine after the assaults had been completed. A specific intent to steal is an essential element of the crime of robbery (*People* v. *Sanchez*, 35 Cal.2d 522 [219 P.2d 9]), as distinguished from the crime of burglary, where the crime is complete when the one accused has entered the house of another with intent to commit *any* felony. It is immaterial to the guilt of defendant that Annie Morales was the one killed rather than Piepa whom he intended to assault. We said in *People* v. *Coefield*, 37 Cal.2d 865, 868 [236 P.2d 570], that a killing is murder of the first degree by force of section 189 of the Penal Code, regardless of whether it was intentional or accidental. (See also *People* v. *Milton*, 145 Cal. 169 [78 P. 549]; *People* v.

*Valentine,* 28 Cal.2d 121, 135 [169 P.2d 1]; *People* v. *Lindley,* 26 Cal.2d 780, 791 [161 P.2d 227]; *People* v. *Boss,* 210 Cal. 245, 249 [290 P. 881]; *People* v. *Denman,* 179 Cal. 497, 498 [177 P. 461].)

We conclude, therefore, that the evidence was more than sufficient to sustain the judgment of conviction on the theory that the killing was perpetrated in the commission of burglary. For that reason it is not necessary to discuss defendant's contention that the evidence was insufficient to show that the homicide occurred in the perpetration of either rape or mayhem. We said in *People* v. *Chavez,* 37 Cal. 2d 656, 671, 672 [234 P.2d 632], quoting from *People* v. *Caldwell,* 55 Cal.App.2d 238, 255, 256 [130 P.2d 495], that " '. . . Under the evidence, the jury might appropriately have concluded appellant's guilt under any one of the three above mentioned theories of grand theft as defined by section 484 of the Penal Code. . . . It was not necessary to require the jury to agree upon the theory. If, under any one of the theories set forth, they believed appellant had gained possession of and appropriated to his own use the moneys of Pacific, he was guilty of grand theft.' The same rule is applicable to the various grounds upon which the jury could have found Chavez guilty of murder in the first degree.''

Defendant contends that the district attorney was guilty of prejudicial misconduct in his *voir dire* examination of the jury when he made this statement: ''It [life imprisonment] doesn't mean, as it does in some other states, that you are committed for the rest of your natural life. It means that a person is eligible for parole *within seven years*; within seven years they can be on the streets. . . .'' (Emphasis added.) The district attorney then went on to inquire of the jurors if they would return a verdict imposing the death penalty if they were convinced beyond a reasonable doubt that defendant was guilty of first degree murder and found no extenuating circumstances. It is at once apparent that the district attorney erroneously stated the law. The district attorney, in his closing argument again referred to the fact that defendant, if given a life sentence, might be able to walk the streets again *within* seven years. In *People* v. *Sampsell,* 34 Cal.2d 757 [214 P.2d 813], we specifically noted that section 3046 of the Penal Code provides that ''No prisoner imprisoned under a life sentence may be paroled until he has served *at least* seven calendar years'' (emphasis added) but that whether such misstatement of the law was so prejudicial as to constitute

reversible error depended upon the particular facts of the individual case. We are of the opinion that under the evidence here it is not possible that defendant could have been prejudiced by the erroneous statement. We do not, however, condone such conduct on the part of the People. It is obvious that there is no segment of the legal profession more familiar, or who should be more familiar, with the criminal law than that which engages in the prosecution of criminal cases, and it can hardly be said that a statement of the character made by the prosecution in this case was the result of mere inadvertence. If this were a case where proof of guilt was questionable, we would be disposed to hold that such a statement constituted prejudicial misconduct and justified a reversal. Upon the record before us, however, we are disposed to hold that the misconduct was not prejudicial to defendant and that a miscarriage of justice did not result therefrom (Cal. Const., art. VI, § 4½).

Defendant contends that the district attorney misstated the evidence as it related to the rape count since there was no evidence that Annie Morales was not the wife of defendant. While we do not deem it necessary to discuss this contention because of our previous holding herein, the record shows that Annie Morales had been living with Piepa for some years and does not show, or tend to show, that she was the wife of defendant.

■ Defendant contends that the following statement made by the district attorney in his closing argument was "in essence, asking the Jury to find and administer the death penalty because of the fact that the co-defendants were let off and not charged the same as Appellant in this case; that they were giving them a 'break,' and that they should not give Appellant a 'break' because the others were given a 'break.'" It is contended that this was highly prejudicial. Apparently the part of the argument claimed to be prejudicial is this: "Now what this defense is trying to do is bring in by innuendo and by inference things that aren't there. I asked you if you would consider the evidence, the evidence alone, weigh the Court's instructions and arrive at your decision. As I will show you shortly there are innuendoes that things aren't this way or that way. That is not evidence. Weigh the evidence and arrive at your decision. Another thing, remember this: Lindy [Parcel] was given every benefit by our office when that complaint was signed. He was charged with one count. He could have been charged with

murder. He could have been charged with a conspiracy to go down there and work George [Piepa] over, charged with burglary and the results of that burglary. He was given the benefit of doubt on everything except what he did." At this, counsel for Parcel objected on the ground that there was no evidence that Parcel was given the benefit of any doubt. It is difficult to understand how this argument could have been prejudicial to defendant or how the jury could have given it the effect claimed by defendant.

 Defendant also claims as prejudicial misconduct an illustration given by the district attorney of first degree murder committed in the perpetration of robbery. The obvious intent in giving such an example was to illustrate to the jury that the homicide committed in the course of such a felony does not have to be of the victim of the felony itself in order to constitute the killing murder of the first degree. *People* v. *Coefield, supra,* 37 Cal.2d 865, answers this contention made by defendant.

Defendant contends that the court committed prejudicial error in limiting his cross-examination of Mr. Nakamura, a clinical technologist, who was called by the People to testify as to his opinion concerning the alleged rape of Annie Morales. Defendant sought to cross-examine Mr. Nakamura concerning the alcohol content found in blood samples taken from the deceased woman. The court sustained an objection on the ground that the alcohol content of the victim's blood was immaterial.  It is, of course, well settled that the extent to which a cross-examination may be carried rests largely in the discretion of the court.  Even if this were not so, the evidence would have been only cumulative since the record clearly shows that the deceased had been drinking on the day of her death. Considering the size of the defendant who was 6 feet 4 inches tall and weighed over 200 pounds and that of the victim who was 5 feet 3 inches tall and weighed 135 pounds, without further evidence of physical condition, the claim of self-defense on the part of defendant is not persuasive.

 There is no merit to defendant's contention that the testimony of the deputy sheriff, who arrested defendant some twelve hours after the commission of the crimes, was admitted only to prejudice and inflame the minds of the jurors. He stated merely where he found him, that he appeared to be sober or "slightly under the influence" of alcohol and that he informed the defendant as to why he was there.

Finally the defendant contends that the court committed prejudicial error in failing to instruct the jury that "If you find that the defendant . . . had not formed an intention to enter the dwelling of George Paipa [sic] with the intent to commit a felony, then you are instructed that Annie Morales was not killed by Eugene Augustine Morlock in the perpetration of or attempt to perpetrate the crime of burglary, citing 41 Cal.2d 384 [260 P.2d 16]." The instruction was refused as argumentative. No error appears inasmuch as the court instructed the jury that "Every person who enters any house or other building with intent to commit any felony is guilty of burglary. The essence of a burglary is entering a place such as I have mentioned with such specific intent; and the crime is complete as soon as the entry is made, regardless of whether the intent thereafter is carried out." There is, therefore, no merit to defendant's contention since no error occurs in refusing to give an instruction when the instructions given adequately cover the subject matter (*People* v. *Steccone,* 36 Cal.2d 234 [223 P.2d 17]; *People* v. *Eggers,* 30 Cal.2d 676 [185 P.2d 1]).

The judgment and order denying a new trial are affirmed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and McComb, J., concurred.

Spence, J., concurred in the judgment.

Appellant's petition for a rehearing was denied March 8, 1956.