[Civ. No. 26695. Second Dist., Div. One. May 15, 1963.]

JOSEPH A. D'ALESSIO, Plaintiff and Appellant, v. WILLIAM R. OATMAN, Defendant and Respondent.

---

Fred J. Martino for Plaintiff and Appellant.

Hagenbaugh, Murphy & Meifert, Sigurd E. Murphy and Henry F. Walker for Defendant and Respondent.

WOOD, P. J.—This is an action for damages for personal injuries resulting from a collision of plaintiff's automobile and defendant's truck at an intersection of streets in Los Angeles. Defendant filed a cross-complaint. Judgment, upon verdicts, was in favor of defendant upon the complaint, and

in favor of cross-defendant (plaintiff) upon the cross-complaint. Plaintiff appeals from the judgment.

Appellant contends that the court erred (1) in overruling his objection to certain questions which were asked him on cross-examination; and (2) in giving certain instructions.

The collision occurred on April 5, 1960, about 11:30 a.m., at the intersection of 111th Place and Main Street. 111th Place, extending east and west, is 40 feet wide. Main Street, a "through highway" extending north and south, is 52 feet wide—with a double white line in the center, on each side of which there are a 10-foot-wide marked lane and a 16-foot-wide shoulder. At the southwest and northeast corners of the intersection there are stop signs requiring vehicular traffic on 111th Place to stop before entering the intersection. Signs had been erected in the area restricting vehicular speed to 30 miles an hour.

Plaintiff, a physician, was driving his Kaiser sports automobile east on 111th Place, intending to go to his office at 11120 South Main Street.

A 17-year-old boy, who was an employee of defendant Oatman, was driving his employer's Chevrolet pickup truck north on Main Street. (The boy is not a party to this action.)

Plaintiff testified, in part, as follows: He stopped his car at the west side of the intersection and remained there while a pedestrian crossed 111th Place in front of him. Then he put his car in first gear and let it roll to the prolongation of the westerly curbline of Main Street where he stopped again, looked for traffic, and saw two vehicles—one southbound and one northbound—clear the intersection. Then, after looking to the north, he looked to the south and saw two other vehicles (one of which was defendant's truck) which were approximately 200 to 250 feet south of the curbline of 111th Place. He immediately started forward in first gear and, after approximately two seconds, shifted (by handshift gear) to second gear and proceeded to cross the intersection. As he approached the center of the intersection he was going 8 or 9 miles an hour. He next saw defendant's truck (the second time) when it was about 50 feet south of his car. He turned his car to the left, but he did not get very far because the truck hit his car, pushed it the rest of the way (diagonally) across the intersection, and it (plaintiff's car) struck a parked car (on the east side of Main Street about 25 feet north of the intersection). He did not apply the brakes, because he was trying to avoid being hit.

Plaintiff also testified that from the time he started into the intersection until the front of his car was approximately at the center of the street, he looked in an easterly direction toward the area of the drugstore (on the southeast corner of the intersection) because he saw pedestrians on the sidewalk at that corner and near the entrance of the drugstore; and that one reason he was looking ahead on 111th Place was that he was going to the alley at the rear of his medical building and he was watching the pedestrians on the street.

An officer testified that the point of impact was 19 feet north of the south side of the intersection and 15 feet west of the east side of it; and that the truck made 5 feet of right front skid marks and 9 feet of right rear skid marks, leading to the point of impact—the marks were at an angle to the northeast.

The truck driver testified: He was driving in a northerly direction, in the traffic lane next to the center of Main Street, at the rate of approximately 32 miles an hour. When he was about 200 feet south of the intersection, another vehicle, traveling north in the same lane, was about 50 to 75 feet in front of him; and another vehicle, traveling north in the second lane from the center, was about 50 feet in front of him (and to his right). When he was about 100 feet south of the intersection, he looked to his left at the westerly half of the intersection, but he did not see a vehicle there. Then he looked to the easterly side of the intersection and saw a car (westbound) that had stopped on the east side of Main Street. Within 2 or 3 seconds he looked again to his left, and then, when his car was about 50 feet from the intersection, he saw appellant's car which was about 2 to 3 feet from the center of Main Street. He applied the brakes, veered to his right, and struck the right center of plaintiff's car.

There is no issue on appeal as to the sufficiency of the evidence to support the judgment, but appellant asserts that since the evidence readily would have supported a judgment in his favor, the alleged errors in rulings as to admissibility of evidence and in giving instructions prejudicially affected his substantial rights.

■■■■■ Appellant contends that the court erred in overruling his objections to questions, which were asked him on cross-examination, as to whether he looked toward the south when he was at places in the intersection that were 5, 10, and 15 feet from the west side of the intersection. He argues that such questions and the overruling of his objections thereto

undoubtedly caused the jury to receive the impression that there was a legal requirement that he continuously observe the approaching truck, and that it was negligence on his part to fail to look toward the south at such 5-foot intervals, and therefore that he was guilty of contributory negligence.

On cross-examination, defendant's counsel asked appellant whether he looked to the south when he was 5 feet into the intersection. Appellant replied that he was looking at some pedestrians who were coming out of the drugstore and were near the curb. The defendant's counsel asked appellant whether he looked to the south when he was 10 feet into the intersection. He replied that he was looking toward the drugstore where the pedestrians were on the sidewalk. Then defendant's counsel asked where appellant was looking when he was 15 feet into the intersection. Thereupon, counsel for appellant said that he objected thereto, that the question was asked and answered many times, and that the question implies that there is a requirement of law that he make a continuous observation in one direction, which is not the law. Counsel for defendant said that it was not then the time for the law. The judge said that counsel for defendant "is going at five feet intervals; if he cuts it much lower than that I will sustain an objection." Counsel for appellant said, "All right." Counsel for defendant asked appellant where he was looking when he was about 15 feet into the intersection. He replied that he was looking for a drugstore. Counsel for defendant asked where he was looking when he was near the center of the street. He replied that he was watching to see where those pedestrians were going.

On direct examination, appellant said that when he stopped at the west side of the intersection (before entering it) he saw two vehicles which were approximately 200 to 250 feet from the intersection (one of which vehicles was the truck); and that he next saw the truck when he was near the center of Main Street and the truck was about 50 feet south of him. It was proper on cross-examination to inquire whether he looked toward the south again after he had stopped at the west entrance of the intersection and before he arrived near the center of Main Street. "It is, of course, well settled that the extent to which a cross-examination may be carried rests largely in the discretion of the court." (*People* v. *Morlock*, 46 Cal.2d 141, 149 [292 P.2d 897]; see also *Cody* v. *Von's Grocery Co.*, 189 Cal.App.2d 329, 333 [11 Cal.Rptr.

168

277].) The court did not err in permitting such cross-examination.

 Appellant also contends that the court erroneously emphasized appellant's duty of sustaining the burden of proof, as to defendant's negligence by giving five jury instructions pertaining to appellant's burden of proof. The instructions so referred are Instructions Nos. 21, 21-B, 132, 116, and 116-A of the Book of Approved Jury Instructions (as modified in respects which are not material in considering this contention).

The first of those instructions (21) was to the effect that the burden of proof was on the party who asserts the affirmative of an issue—that when the evidence is contradictory, the decision must be made according to the preponderance of the evidence—that when the evidence is evenly balanced, the finding must be against the party carrying the burden of proof.

The second instruction (21-B)' was to the effect that while the party having the burden of proof must prove his allegation by a preponderance of the evidence, this rule does not require demonstration, that is, such degree of proof as produces absolute certainty—that in a civil action it is proper to find that a party has succeeded in carrying his burden of proof if the evidence favoring his side of the question of fact is more convincing than that tending to support the contrary side.

Appellant implies that since Instruction 21 was given, the other Instruction 21-B should not have been given. It would seem that the giving of No. 21-B was favorable to appellant in that it told the jury that although, according to No. 21, the party asserting the affirmative has the burden of proof, that rule does not require demonstration.

The third instruction so referred to (132) was to the effect that the law does not permit the jurors to guess or speculate as to the cause of the accident—that if the evidence is equally balanced on the issue of negligence or proximate cause, then the party making the charge has failed to fulfill his burden of proof.

The fourth instruction so referred to (116) was to the effect that as to the complaint the burden is upon the plaintiff to prove that the defendant was negligent and that such negligence was a proximate cause of injury to plaintiff—that if plaintiff has not fulfilled this burden, the defendant is entitled to the verdict and the jurors need not consider the

issue of contributory negligence; that if plaintiff has fulfilled this burden, he is entitled to damages unless the defense of contributory negligence has been established; that to establish the defense of contributory negligence, the burden is upon the defendant, and that if this burden has been fulfilled, the defendant is entitled to the verdict, and if it has not been fulfilled, the decision of the jurors on the issue of contributory negligence must be in plaintiff's favor.

The fifth instruction so referred to (116-A) was to the effect that as to the complaint the burden is upon the plaintiff to prove that defendant was negligent and that such negligence was a proximate cause of injury to plaintiff; that to establish contributory negligence, the burden is upon defendant to prove that plaintiff was negligent and that such negligence contributed as a proximate cause of plaintiff's injuries; that as to the cross-complaint the burden of proof is the same except that the cross-complainant is to be considered as though he were the plaintiff and the cross-defendant as though he were the defendant.

Appellant does not assert that any declaration in those instructions was erroneous, but asserts that the matter of his burden of proof was overemphasized by repetition and he was prejudiced thereby. As above stated, there was a cross-complaint herein. The first two instructions (21 and 21-B) were in general language and declared that the burden of proof was on the party asserting the affirmative of an issue. Under the pleadings herein, those instructions were applicable to both parties. Instruction 132 declared against guessing as to the cause of the accident, and said that if the evidence was equally balanced on the issue of negligence and proximate cause, the party asserting the affirmative had failed to carry the burden of proof. That instruction was applicable to both parties. It is to be noted further that Instruction 132-A (not herein set forth), which was given next following No. 132, stated in effect that "the same principle" was applicable to the burden of proving contributory negligence. Instruction 116 referred to the burden of proof "as to the complaint," and Instruction 116-A again referred to the burden of proof "as to the complaint" and stated further in effect that the burden of proof "as to the cross-complaint" was on the cross-complainant the same as the burden was on plaintiff under the complaint, and that the burden was on defendant to prove contributory negligence. It appears that the references to burden of proof were not directed with undue em-

phasis to plaintiff's burden of proof, but were directed generally to the party asserting the affirmative of issues; and under the issues herein (shown by the complaint, cross-complaint, and answers alleging contributory negligence) each party had asserted similar affirmative issues. It is to be noted further that the court gave an instruction to the effect that if in the instructions any rule had been stated in varying ways, no emphasis thereon was intended and none should be inferred by the jurors. In *Faeh* v. *Union Oil Co.*, 107 Cal.App. 2d 163, 165-166 [236 P.2d 667], it was said: "The jury was properly instructed that even though the propositions governing defendant's conduct were stated in various ways neither the repetition of instructions nor any other behavior on the part of the judge in delivering the charge was meant to indicate in one way or another what he thought of the controversy.

"Clearly the mere repetition of instructions upon the same subject in view of the trial judge's admonition did not constitute prejudicial error." In the present case, the court did not err in giving the instructions regarding burden of proof.

Appellant also contends that the court erred in giving the following instruction (BAJI No. 104-A) : "This does not mean that the law seeks and recognizes only one proximate cause of an injury, consisting of only one factor . . . or the conduct of only one person. To the contrary, the acts and omissions of two or more persons may work concurrently as the efficient cause of an injury, and in such a case, each of the participating acts or omissions is regarded in law as a proximate cause. . . ." Appellant argues that this instruction is proper where there is doubt as to the liability of two defendants or where it is contended that the negligence of two or more defendants causes the accident, but it is not appropriate in the present case in view of the close issues of negligence and proximate cause. In the present case, contributory negligence was alleged, and under the evidence the jury could consider whether there was negligence on the part of each party which concurred as a proximate cause of the accident. It was not error to give the instruction.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.