[No. C005011. Third Dist. Nov. 21, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
MELVIN BROOKINS, Defendant and Appellant.

1298

**COUNSEL**

John Doyle for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Jane N. Kirkland and Jesse Witt, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SPARKS, Acting P. J.**—This is a case in which the defendant's sole challenge is to the application of one of the recidivist statutes. The challenge relates to whether one of his prior offenses satisfies a criterial predicate for the imposition of a life term in prison without possibility of parole for 20 years under Penal Code section 667.7 (subsequent undesignated section references are to this code). Specifically, we must determine whether an abstract of judgment and related conviction documents showing only that the defendant was convicted of robbery while personally using a firearm (§§ 211, 12022.5, subd. (a)) are sufficient to demonstrate this prior conviction constitutes the type of robbery contemplated by the statute. This in turn involves the question of whether personal use of a firearm not shown to be loaded or used as a bludgeon is the equivalent of a prior prison term for "robbery involving use of force or a deadly weapon" within the meaning of subdivision (a) of section 667.7. We are compelled to conclude that without more the bare fact of a conviction for robbery while personally using a firearm not shown to be loaded or used as a bludgeon is not the same as robbery while using force or a deadly weapon. Consequently, we must vacate the enhancement.

As this requires a lengthy description of the defendant's sentence and renders superfluous any recitation of the facts underlying the crimes to which he pled guilty, we shall forego the customary introduction and

recitation of the facts supporting defendant's current convictions and concentrate instead upon the facts relating to sentencing.

## THE INFORMATION

After receiving permission from the trial court, the prosecution filed a second amended information. This pleading alleged five substantive crimes all of which occurred in May 1987: (1) unauthorized taking of an automobile (Veh. Code, § 10851, subd. (a)); (2) second degree robbery while personally using a firearm (§§ 211, 212.5, 12022.5, subd. (a)); (3) second degree robbery while personally using a deadly or dangerous weapon (§§ 211, 212.5, 12022, subd. (d)); (4) first degree robbery in an inhabited dwelling while personally using a firearm, intentionally inflicting great bodily injury in the process (§§ 211, 212.5, 12022.5, subd. (a), 12022.7); and (5) grand theft (§ 487, subd. (1)).

The pleading also alleged five prior convictions: (1) a February 1980 conviction for robbery while personally using a firearm (§§ 211, 12022.5, subd. (a)), a "serious" felony (§§ 667, subd. (d), 1192.7, subd. (c)(19)) which constituted a prior separate prison term (§ 667.5, subd. (g)) and came within section 667.7; (2) a June 19, 1967, conviction for rape by force (former § 261, subd. (3) [Stats. 1913, ch. 122, § 1, p. 213]), a serious felony (§§ 667, subd. (d), 1192.7, subd. (c)(3)) constituting a prior separate prison term (§ 667.5, subd. (g)) and coming within section 667.7; (3) a June 19, 1967, conviction for kidnapping (§ 207), a serious felony (§§ 667, subd. (d), 1192.7, subd. (c)(20)); (4) a January 1974 conviction for robbery (§ 211), a serious felony (§§ 667, subd. (d); 1192.7, subd. (c)(19)); and (5) a May 1980 conviction for escape (§ 4532, subd. (b)) after which the defendant failed to remain free for a period of five years from any subsequent convictions (§ 667.5, subd. (b)).

## THE PLEA, JUDGMENT AND SENTENCE

Following his arraignment on the second amended information, the defendant changed his plea. He pled guilty to all the substantive crimes and any concomitant enhancing allegations, waived his right to a jury trial on the allegations of prior convictions (while reserving any appellate contentions with respect to them), and stipulated the February 1980 conviction constituted a separate prison term. The court took the matter of the prior convictions under submission pending the receipt of the People's exhibits in support of the enhancement allegations. The court found all allegations to be true, ruling by minute order.

At sentencing, in accordance with the plea bargain, the court selected count four as the principal term, designated all remaining counts and their

enhancements as concurrent sentences, and stayed prior conviction number five, the May 1980 escape. The court then made alternative sentencing dispositions. Under section 1170, it imposed the upper term of six years for the residential robbery in count four, added three years for the great bodily injury enhancement and two years for the firearm use enhancement, imposed five-year enhancements for priors one, two, and four for another fifteen years, and stayed prior number three under authority of our decision in *People* v. *Deay* (1987) 194 Cal.App.3d 280, 290 [239 Cal.Rptr. 406], as it was not brought and tried separately from prior number two. The total section 1170 sentence was thus 26 years. Under section 667.7, the pertinent provisions of which we shall encounter shortly, the court found the current offense, count number four, fit the section's criteria for a present offense and found priors one and two fit the section's criteria for previous offenses, so it imposed the life sentence without possibility of parole for 20 years authorized by the section, consecutive to which the court imposed a five-year enhancement for prior number four (the only "unused" prior also unstayed). Determining section 667.7 was the greater sentence (§ 667.7, subd. (a)(1), the court set that as the defendant's term.

CONTENTION ON APPEAL

Having completed the recounting of the complexities of the defendant's sentencing, we come at last to his contention. In pertinent part, section 667.7, subdivision (a) provides: "Any person convicted of a felony in which the person inflicted great bodily injury as provided in Section 12022.7 . . . who has served two or more prior separate prison terms as defined in Section 667.5 for the crime of . . . rape by force, violence, or fear of immediate and unlawful bodily injury on the victim or another person; . . . [or] robbery involving the use of force or a deadly weapon . . . is a habitual offender . . . ."[1]

As noted, one of the defendant's two priors used for imposition of section 667.7 was his 1980 conviction for robbery while personally using a firearm,

---

[1] Subdivision (1) of section 667.7, subdivision (a) then prescribes the punishment for those with only two prior separate prison terms as life imprisonment without parole for 20 years or for the determinate term, whichever is greatest. Subdivision (2) prescribes the punishment for those with three or more such terms as life imprisonment without the possibility of parole.

As defined in section 667.5, subdivision (g) a prior separate prison term means "a continuous completed period of prison incarceration imposed for the particular offense alone or in combination with concurrent or consecutive sentences for other crimes, including any reimprisonment on revocation of parole which is not accompanied by a new commitment to prison, and including any reimprisonment after an escape from incarceration."

Defendant makes no challenge to his service of a prior separate term for the forcible rape conviction or to his present conviction of the robbery during which he inflicted great bodily injury within the meaning of section 12022.7.

as defined by section 12022.5. For purpose of this enhancing statute, the robbery must have involved "the use of force or a deadly weapon. As we held in *People* v. *Logan* (1987) 190 Cal.App.3d 599 [235 Cal.Rptr. 547], the term "use" in section 667.7, subdivision (a) means more than merely being armed with a deadly weapon. It means, among other things, "to carry out a purpose or action by means of, to make instrumental to an end or process and to apply to advantage." (*Id.,* at p. 606, quoting *People* v. *Chambers* (1972) 7 Cal.3d 666, 672 [102 Cal.Rptr. 776, 498 P.2d 1024], internal quotation marks deleted.)

The defendant argues that there is no evidence to show the robbery was committed by force and hence the statute's third criterion can be satisfied only if a deadly weapon was used. He contends that a firearm must be loaded in order for it to be a "deadly" weapon, as required by section 667.7. Since the evidence adduced in support of this prior conviction shows nothing more than "use," and does not show whether the firearm was loaded or not, in his view it is inadequate to demonstrate the prior was a robbery "involving the use of . . . a *deadly* weapon." (Italics added.) Consequently, the prior conviction for robbery does not satisfy one of the criterial predicates for application of section 667.7. We are constrained to agree that, despite the defendant's eminent suitability for the harsh treatment prescribed by section 667.7, the prosecution has failed to prove the necessary facts for its imposition. We must therefore vacate the sentence imposed pursuant to that section.

ANALYSIS

The proof of the prior robbery conviction consisted of certified copies of the information, defendant's declaration regarding a plea of guilty, a subsequent amended information, clerk's minutes of his sentencing, and the abstract of judgment. All of these documents indeed establish that on the occasion in question defendant had been convicted of robbery with the use of a firearm under section 12022.5.[2] However, nothing more than the statutory language describing the offense and enhancement is present in any of these documents.

Section 12022.5 does not require that a firearm be loaded or even operable in order for the enhancement to be imposed. (*People* v. *Wolcott* (1983) 34 Cal.3d 92, 102 [192 Cal.Rptr. 748, 665 P.2d 520]; *Chambers, supra,* 7 Cal.3d at p. 672; *People* v. *Jackson* (1979) 92 Cal.App.3d 899 [155 Cal.Rptr. 305].) Moreover, the firearm need not be fired or used as a bludgeon in

---

[2] At all relevant times, section 12022.5 imposed an additional two-year prison term for any person "who personally uses a firearm in the commission or attempted commission of a felony . . . ."

order to constitute use under this statute. "Although the use of a firearm connotes something more than a bare potential for use, there need not be conduct which actually produces harm but only conduct which produces a fear of harm or force by means or display of a firearm in aiding the commission of one of the specified felonies." (*Chambers, supra,* 7 Cal.3d at p. 672.) Consequently, behaviors which justify the "use" of a firearm include not only the intentional discharge of the weapon or its employment to hit or strike the victim, but also the mere display of the weapon in a menacing or threatening way. (*People* v. *Hays* (1983) 147 Cal.App.3d 534, 543-549 [195 Cal.Rptr. 252]; *People* v. *Reaves* (1974) 42 Cal.App.3d 852, 857 [117 Cal.Rptr. 163]; *People* v. *Spencer* (1972) 22 Cal.App.3d 786, 800 [99 Cal.Rptr. 681]; see CALJIC No. 17.19 (1980 rev.); cf. § 1203.06, subd. (b)(3).)

■ Thus, the mere fact the defendant was convicted of robbery with a gun use enhancement implies nothing about whether the gun was loaded or whether it was used as a bludgeon. Nor is there anything in the documentation submitted for proof of this prior conviction which indicates whether the gun used in the robbery was loaded or used as a bludgeon. The amended information in Yolo County Superior Court action No. 6328 merely alleges the defendant "did willfully, unlawfully, and by means of force or fear take personal property" and "in the commission . . . personally used a firearm, within the meaning of . . . Section 12022.5. . . ." Thus, even looking at the entire record (*People* v. *Guerrero* (1988) 44 Cal.3d 343, 354-355 [243 Cal.Rptr. 688, 748 P.2d 1150]), we must still assume the gun was not loaded or used as a bludgeon because we cannot presume the existence of material facts not proved beyond a reasonable doubt by the prosecution. And there is no stipulation the firearm was loaded or used as a bludgeon (unlike the stipulation that the conviction constituted a separate prison term).

It is true that in appropriate cases the fact finder may draw the inference from the circumstances surrounding use of a gun that it was real and was loaded. (*People* v. *Aranda* (1965) 63 Cal.2d 518, 533 [47 Cal.Rptr. 353, 407 P.2d 265]; *People* v. *Orr* (1974) 43 Cal.App.3d 666, 672 [117 Cal.Rptr. 738]; *People* v. *Newman* (1951) 102 Cal.App.2d 302, 306-307 [227 P.2d 470].) "[T]he jury could draw the inference that [the gun] was loaded, from such circumstances as flourishing or pointing it at the victim with threatening words or conduct indicating an intention to fire unless he complies with the defendant's demands." (2 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Crimes Against Property, § 637, p. 718.) But in this case no surrounding circumstances were presented to the court. Consequently, there were no circumstances from which the inference might be drawn. Thus, the

People provided no proof the firearm was either loaded or used as a bludgeon. Unfortunately, this is a significant lacuna.

A deadly weapon, the California Supreme Court declared as early as 1881, is "one likely to produce death or great bodily injury." (*People* v. *Fuqua* (1881) 58 Cal. 245, 247; accord *People* v. *Morlock* (1956) 46 Cal.2d 141, 145 [292 P.2d 897].) But the distinction between deadly weapons on the one hand and dangerous ones on the other has not always been made explicit or even drawn at all. In part, this is so because the term "dangerous" has sometimes been conjoined with that of "deadly." (See, e.g., former Pen. Code, 211a (Stats. 1961, ch. 1874, § 1) [robbery perpetrated when armed with "a dangerous *or* deadly weapon" was first degree].) On occasion, the cases have treated the terms as synonymous and the distinction drawn has been between those instruments which are designed to be lethal and those which are merely used in a lethal way. Thus, in *People* v. *Raleigh* (1932) 128 Cal.App. 105 [16 P.2d 752], in an opinion described in a leading text as "definitive" (2 Witkin & Epstein, Crimes Against Property, *op. cit. supra,* § 637 at p. 717), the court distinguished between two classes of dangerous or deadly weapons: "There are, first, those instrumentalities which are weapons in the strict sense of the word, and, second, those instrumentalities which are not weapons in the strict sense of the word, but which may be used as such. The instrumentalities falling in the first class, such as guns, dirks and blackjacks, which are weapons in the strict sense of the word and are 'dangerous or deadly' to others in the ordinary use for which they are designed, may be said as a matter of law to be 'dangerous or deadly weapons'. This is true as the ordinary use for which they are designed establishes their character as such. The instrumentalities falling into the second class, such as ordinary razors, pocket-knives, hatpins, canes, hammers, hatchets and other sharp or heavy objects, which are not weapons in the strict sense of the word and are not 'dangerous or deadly' to others in the ordinary use for which they are designed, may not be said as a matter of law to be 'dangerous or deadly weapons'. When it appears, however, that an instrumentality other than one falling within the first class is capable of being used in a 'dangerous or deadly' manner, and it may be fairly inferred from the evidence that its possessor intended on a particular occasion to use it as a weapon should the circumstances require, we believe that its character as a 'dangerous or deadly weapon' may be thus established, at least for the purposes of that occasion." (*Raleigh, supra,* 128 Cal.App. at pp. 108-109 [construing former § 211a], quoted with approval in *People* v. *Graham* (1969) 71 Cal.2d 303, 327-329 [78 Cal.Rptr. 217, 455 P.2d 153].)

This distinction was later adopted by the high court and applied to the crime of assault with a deadly weapon in violation of section 245. (*People* v.

*McCoy* (1944) 25 Cal.2d 177, 188-190 [153 P.2d 315].) Thus, for purposes of that crime, a deadly weapon has been defined as one "which is 'likely to produce death or great bodily injury.' Some instruments, e.g., firearms used as such, are obviously or 'inherently' deadly weapons. But the question is often one of fact, determined by the manner in which the instrument was used; . . ." (1 Witkin & Epstein, Crimes Against the Person, *op. cit. supra,* § 417 at p. 478; see also CALJIC No. 9.03 (1985 rev.).) Under this amalgamated definition, the pointing of an unloaded gun at another person with no effort or threat to use it as a bludgeon is not an assault with a deadly weapon under section 245. (*Orr, supra,* 43 Cal.App.3d at p. 672; accord *United States* v. *Garcia* (9th Cir. 1977) 555 F.2d 708, 712.)

At other times the courts have treated the terms as distinct. "The words 'dangerous or deadly' are used disjunctively [in former § 211a] and are not equivalents. Thus, it is not necessary to show that the weapon is deadly so long as it can be shown that it is dangerous." (*Aranda, supra,* 63 Cal.2d at p. 532, citations omitted.) When so distinguished, the implicit definition of a "dangerous" weapon is one which is not ordinarily lethal but may be used in a lethal fashion. Hence even an unloaded pistol "may be a 'dangerous' weapon within the meaning of the statute since it is capable of being used as a bludgeon." (*Ibid.*)

This distinction between deadly and dangerous weapons was highlighted in *People* v. *Raner* (1948) 86 Cal.App.2d 107 [194 P.2d 37]. There it was conceded the defendants were armed with an unloaded gun. (*Id.,* at p. 110.) On appeal, they contended they could not be convicted of first degree robbery (which at the time required being armed with a deadly or dangerous weapon) and were not ineligible for probation under section 1203 (which precluded probation for robbers who were armed with or used a deadly weapon) because their weapon was, at most, a dangerous weapon. (*Id.,* at pp. 110-111.) The court rejected the first claim and accepted the second. Since first degree robbery could be committed while armed with *either* a dangerous *or* a deadly weapon, and since unloaded guns are at least capable of use as dangerous weapons, the degree was properly fixed. (*Id.,* at p. 111.) But the converse was not true. A dangerous weapon is not necessarily a deadly weapon and hence the restriction in section 1203 against granting probation to those armed with or using a deadly weapon did not apply. Under the undisputed facts, "the court could have properly found the unloaded rifle to be at most a 'dangerous' weapon; and that, although such a finding would support a conviction under section 211a for first degree robbery, it would not under the provisions of section 1203 deprive the trial court of its legal discretion." (*Ibid.*) Consequently, the *Raner* court held that in the absence of statutory definition to the contrary, an unloaded gun not used as a bludgeon cannot be a deadly weapon under either the robbery

statute or the probation statute. (*Id.,* at pp. 111-113.) "The distinction recognized in the cited cases between unloaded guns when used or threatened to be used as bludgeons, and when not so used, is the distinction between unloaded guns as deadly weapons and as merely dangerous weapons. It is a fundamental distinction which should be recognized in the absence of a controlling statutory definition of the word 'deadly.'" (*Id.,* at p. 113.)

Occasionally, the term "deadly weapon" has been specially defined by statute to include dangerous weapons. Thus, for example, former section 3024, subdivision (f) defined a deadly weapon to include "any . . . pistol, revolver, or any other firearm, . . . and any metal pipe or bar used or intended to be used as a club." (Stats. 1957, ch. 1617, § 3, p. 2965.) This definition, it has been held, "includes any firearm, whether loaded or not, . . ." (*Aranda, supra,* 63 Cal.2d at p. 533.) But such a special definition, the *Raner* court emphasized, "is restricted in terms to said section 3024 and has no bearing upon the meaning of the same words when used in other provisions of the Penal Code." (*Raner, supra,* 86 Cal.App.2d at p. 112; accord *People* v. *Ramirez* (1979) 93 Cal.App.3d. 714, 731 [156 Cal.Rptr. 94]; *People* v. *Henderson* (1957) 151 Cal.App.2d 407, 409 [311 P.2d 594]; see also *People* v. *Caberera* (1930) 104 Cal.App. 414 [286 P. 176] [same definition in predecessor to former section 3024 inapplicable in determining meaning of deadly weapon as used in section 245].)

In sum, in the absence of a special statutory definition, the term "deadly weapon" has been construed to be limited to either instruments which are designed to be lethal (such as a loaded gun) or to dangerous implements which can be used in a lethal way (such as an unloaded gun used as a bludgeon).

Applying that analysis to section 667.7, the enhancement cannot stand. The statute does not define the word "deadly weapon" and thus we accord that term its recognized meaning as either an instrument designed to cause death or great bodily injury or as an instrument used in such a fashion as to be capable of causing death or great bodily injury. Under this settled meaning, an unloaded firearm not used as a bludgeon meets neither definition and hence is not a deadly weapon. Our decision in *People* v. *Brewster* (1969) 276 Cal.App.2d 750 [81 Cal.Rptr. 237] is in accord. There we remanded the case for a finding on defendant's eligibility for probation under section 1203 because "[a]s the instant judgment presently stands a determination cannot be made whether the trial court in denying defendant probation determined he had been armed with a loaded pistol (or one intended for possible use as a bludgeon) and thus was a 'deadly weapon' and therefore he was eligible for probation only 'in unusual cases' or whether it determined him to be

armed with an unloaded pistol (not intended for bludgeoning use) and therefore a dangerous but not deadly weapon." (*Id.,* at p. 753.)

Since in this case the prosecution adduced no facts in the record from which we can determine the firearm personally used by the defendant in the 1980 robbery was loaded (and thus per se deadly) or was used in a lethal manner, we cannot say a deadly weapon was used in the commission of the robbery. And since the 1980 robbery does not satisfy the prior offense criteria of section 667.7, there is insufficient evidence to invoke that provision and it must fall.

The People make three efforts at saving the enhanced sentence. ■ The least meritorious is the request we "interpret" the statute to include any robbery involving use of a gun (whether loaded or not and even if not used as a bludgeon) because that would further the legislative purpose. However, that would be the rankest judicial legislation; the Legislature used the undefined term "deadly weapon," which under well-established judicial interpretation does *not* include unloaded guns in the absence of facts showing actual use of the unloaded gun as a bludgeon. Given its well settled meaning we must presume that the Legislature used the term in its technical sense and in the consistent manner in which it has been interpreted. (*Logan, supra,* 190 Cal.App.3d at p. 605.) ■ We also reject their contention it was the defendant's burden to establish the gun was not loaded or used as a bludgeon. To the contrary, it was the People's burden to demonstrate the defendant's prior prison terms were sufficient to bring him within the statute. (*Id.,* at p. 604, fn. 3; *Ramirez, supra,* 93 Cal.App.3d at p. 731; see *Orr, supra,* 43 Cal.App.3d at p. 671; cf. *People* v. *Peak* (1944) 66 Cal.App.2d 894, 900 [153 P.2d 464] [burden on People to prove weapon was deadly in assault with a deadly weapon].)

The last of their arguments, while possessing some surface attraction, ultimately cannot be sustained. Section 667.7, in addition to qualifying robberies involving the use of a deadly weapon as priors satisfying the prerequisites for imposition of the enhancement, also qualifies robberies "involving the use of force." The section 12022.5 personal use of a firearm enhancement connected with the defendant's 1980 robbery conviction determined at a minimum the defendant displayed the firearm in a menacing manner. (*People* v. *Turner* (1983) 145 Cal.App.3d 658, 684 [193 Cal.Rptr. 614].) From this factual predicate the People argue that the commission of a robbery with the use of a gun necessarily constitutes a robbery by force.

■ It is true that for purposes of the robbery statute courts have occasionally equated force with fear when a gun has been used. (See *People* v. *LeBlanc* (1972) 23 Cal.App.3d 902, 908-909 [100 Cal.Rptr. 493]; *People* v.

*McChessney* (1940) 39 Cal.App.2d 36, 38 [102 P.2d 455].) In this sense, the infliction of fear becomes itself a form of force. "Although, in most cases, fear is a necessary byproduct of the employment of force, the coercive effect of fear induced by threats to a victim's person or property is in itself a form of force, so that either factor may normally be considered as attended by the other." (17 Cal.Jur.3d (rev.) Criminal Law, § 489, p. 90, fns. omitted.) But whatever validity this theory of equivalency may have for the robbery statute it cannot encompass the enhancement statute. Section 667.7, by its very terms, draws a distinction between a robbery accomplished by the use of "force" on the one hand and a robbery committed with the use of a "deadly weapon" on the other. Thus, the statutory term of "force" cannot be read to mean "fear induced by the use of a deadly weapon." If evidence of gun use automatically constituted force, it would make redundant the alternative forms of robbery that satisfy section 667.7—robbery involving "the use of force or a deadly weapon"—since obviously the "use" of any deadly weapon (its *menacing* display) would instill fear and thus under this construction would always amount to force. ■ It is axiomatic we must avoid construction of a statute which renders terms mere surplusage. (*City and County of San Francisco* v. *Farrell* (1982) 32 Cal.3d 47, 54 [184 Cal.Rptr. 713, 648 P.2d 935].) Thus, for purposes of the section 667.7 enhanced sentence, we cannot adopt a definition of force which incorporates the use of a particular deadly weapon, i.e., a gun. we are therefore compelled to reject this argument by the People.

■ We must consequently vacate the enhanced sentence. Moreover, since we are reversing for insufficiency of the evidence to support the habitual criminal allegation, this precludes the People from attempting to prove it a second time in this proceeding. (1 Witkin & Epstein, Defenses, *op. cit. supra,* § 319, pp. 367-369; cf. *People* v. *Bonner* (1979) 97 Cal.App.3d 573 [158 Cal.Rptr. 821] [reversal for insufficiency of evidence to support "no probation" allegation precludes any retrial].) However, we need not remand for resentencing. Since the trial court made alternative sentencing dispositions, now that the section 667.7 sentence has been vacated we shall simply order the section 1170 disposition, about which the defendant raises no contentions of error, imposed in place of the original sentence.

### DISPOSITION

The life sentence imposed pursuant to section 667.7 is vacated and the 26-year state prison sentence pursuant to section 1170 is imposed instead. In all other respects, the judgment is affirmed. The trial court is directed to issue a

new abstract of judgment reflecting this change and forward it to the Department of Corrections.

Sims, J., and Davis, J., concurred.

Respondent's petition for review by the Supreme Court was denied March 15, 1990.