[No. A048701. First Dist., Div. Two. July 12, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN RAMON TUGGLE, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976 and 976.1, this opinion is certified for publication, except for parts I, II, III, and IV of the Discussion.

148

**COUNSEL**

Robert Derham, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Frances Marie Dogan, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**KLINE, P. J.**—Steven Ramon Tuggle appeals from convictions of attempted murder, assault with a deadly weapon and intimidation of a witness. He contends his conviction must be reversed because of the prosecutor's discriminatory use of peremptory challenges and the trial court's errors in admitting evidence of his prior assaults on the victim and failing to instruct the jury on the lesser offenses. He also claims the evidence was insufficient to support the court's decision to sentence him as a habitual offender under Penal Code section 667.7, the court violated the prohibition against dual use of facts by using the same finding both to sentence under that statute and to enhance the sentence under Penal Code section 12022.7, and the abstract of judgment must be clarified to show that he is serving a life term with a minimum parole eligibility date of 20 years.

### Statement of the Case

Appellant was charged by information filed October 2, 1989, with one count of attempted first degree murder (Pen. Code, §§ 664, 187),[1] one count of assault with a deadly weapon (§ 245) and two counts of intimidating a witness (§ 136.1, subd. (c)(1).) With respect to counts 1 and 2, it was alleged that appellant inflicted great bodily injury within the meaning of sections 12022.7 and 1192.7, subdivision (c)(8), and that appellant was a habitual offender within the meaning of section 667.7. It was further alleged in connection with count 1 that appellant personally used a deadly and dangerous weapon within the meaning of sections 12022, subdivision (d), and 1192.7, subdivision (c)(23). Finally, it was alleged that appellant had suffered two prior convictions for serious felonies within the meaning of sections 667 and 1192.7. Appellant pled not guilty and denied the special allegations and priors on October 2.

Trial began on November 27 and on November 30 the jury found appellant guilty of attempted first degree murder, assault with a deadly weapon and one count of intimidating a witness and found the great bodily injury and weapon use allegations true. Appellant was found not guilty of the other count of intimidation. Appellant waived his right to trial by jury on the truth of the prior convictions and court trial began on December 5. On December

---

[1]All further statutory references will be to the Penal Code unless otherwise specified.

21, the court found the prior conviction and habitual offender allegations true.

Appellant was sentenced on February 15, 1990. On count 1, attempted murder, appellant received a life term without possibility of parole for 20 years (§ 667.7, subd. (a)(1)) plus three years for the section 12022.7 great bodily injury allegation. A one-year enhancement for the section 12022, subdivision (d), allegation was stayed. On count 2, the court stayed sentences of three years for the assault and three years for the section 12022.7 enhancement. On count 4, the court imposed a term of three years to run concurrently with the sentence on count 1. Sentence on the two prior convictions was stayed.

Appellant filed a timely notice of appeal on February 20, 1990.

STATEMENT OF FACTS

Linda Leach first met appellant in the spring of 1988. They were lovers for about a week, then appellant went to prison. On Friday, July 7, 1989, Leach met appellant on the street in the Tenderloin District of San Francisco and he said he had been released a couple of days before. Leach asked appellant if he disliked her because she had testified against him at a parole revocation hearing which resulted in his being returned to prison and he told her he did not.

The next day, appellant came to Leach's room in a hotel on Eddy Street.[2] She invited him in, feeling their relationship was okay. On July 9, appellant visited again. During this visit, he pinned Leach down on the bed with his knees on her shoulder and slapped her across her face. They had not had a fight before this. The next morning appellant said he had slapped her because she was "talking bad" about one of his friends.

Appellant was at Leach's home on July 10, 11 and 12. Throughout the week Leach repeatedly asked if he disliked or hated her and he said no, he understood she had done what she had to do. On July 12, appellant slapped her again. Leach had the hotel security guards escort appellant out and told the police he had slapped her twice.

Appellant returned that night. The next day, while Leach was lying on the sofa bed, appellant again pinned her down with his knees, held her neck over the bed and pressed his thumbs into her wind pipe. Leach called to her friend, who came in and yelled; appellant got up and Leach told her friend

---

[2]Leach had two connecting rooms and a bathroom.

not to leave until appellant left because she was scared of him. Leach talked to the police again and told the hotel desk clerks not to let appellant upstairs.[3]

Leach had three or four different butcher knives, most of which she kept wrapped up in a bag in a corner closet out of reach of her young children. On July 13, she had washed an ivory-colored knife, and put it on the top shelf of the medicine cabinet in the back room. That night, Leach came home to find appellant in the room, her roommate having let him in against her instructions, and Leach and appellant had a "big argument" about her not wanting him there. She went to call security and he went to the back room saying he was getting his coat; Leach yelled to security that he did not have a coat. Appellant was in the back room five or ten minutes, then left. Before leaving, he told Leach in the presence of her roommate and the guard: "I'm a killer[,] bitch. I'll cut your throat."

Appellant called Leach at about 1 or 2 in the morning on July 14 and they talked for two or three hours. Appellant said he wanted to talk to her and she said she would see him outside later that day. About 1 in the afternoon, Leach ran into appellant on the street. He wanted to go to her room to talk but she refused, saying she had to go to Woolworth's. Leach was afraid of appellant but the two walked about two and a half blocks to Woolworth's, engaged in pleasant conversation, and Leach felt like "everything was okay."

Appellant accompanied Leach as she got some shampoo and waited to pay. As the cashier was giving Leach her change, Leach suddenly "felt [she] lost [her] air" and could not breathe. She turned her head and saw appellant's hand, fist closed, drawing back. She took two steps and yelled for help. The manager told her she had a butcher knife stuck in her back, told her to bend over the counter, removed the knife and threw it on the floor. The knife was the one that had been in Leach's apartment on July 13. The police arrived and Leach told them appellant had stabbed her.

Taruna Patel, the Woolworth's cashier, testified that she was taking Leach's change out of the register when Leach screamed. Patel looked up and saw a knife behind her back. Patel did not see who put the knife in Leach's back and had not heard any argument; Leach was the only person standing by the register.

---

[3]LaBerta Slavin testified that she was visiting Leach on July 13, was woken by Leach calling her, went into the other room and saw appellant on top of Leach with his hands around her neck, choking her. Slavin asked what the problem was, appellant said to "get the fuck out of there," and Slavin returned to the back room. She stayed in the other room about two hours and did not hear anything more from the front room. Slavin recognized the knife used to stab Leach as one from Leach's apartment.

Gene Lindmeyer, Woolworth's general manager, was about 20 or 25 feet from Patel's register when he observed a Black man bringing his hand down into the back of a White woman and heard a loud thump. Lindmeyer first thought the woman had been hit then she turned and he saw a knife in her back. The man left the store quickly. Lindmeyer told his associate manager, Richard Lessing, to take care of the woman and followed the man. Lessing pulled out the knife, which appeared to be buried up to the handle, dropped it on the floor and applied pressure in an attempt to stop Leach's bleeding.

Meanwhile, outside the store, Lindmeyer saw the man was already half a block away, called two police officers over and reentered the store with them. Officer Thomas Mandelke asked Leach what had happened and she said appellant had stabbed her. There was a pool of fresh blood on the floor next to Leach and there was blood on the knife which Officer Stephanie White retrieved.

Leach stayed overnight at San Francisco General Hospital. The stab wound was in the top part of her back and spinal cord but her spinal cord was not injured. As a result of the stabbing, Leach had problems breathing for about two weeks, gasping for air after walking two or three feet. She was given morphine while in the hospital and Tylenol with codeine when she was discharged. She still had a scar at the time of trial.

On July 16, appellant called Leach and threatened that he had a "piece" and would kill her and "get" her children. She reported this call to the police, telling them appellant had said "You fat bitch, I'll get you this time, I've got a gun." After he was arrested, appellant called Leach from jail many times. Leach repeatedly asked why he had stabbed her and he finally said it was because she had testified against him at his parole revocation hearing. Leach also received four or five letters from appellant. Portions of two of the letters, which Leach received on September 11, after she had told appellant that she had been subpoenaed to testify at the preliminary hearing in this case, caused Leach to feel threatened and afraid.[4] Leach thought

[4] The first of these letters stated: "Do you really think I'm going to get life? I told you that so you wouldn't know exactly how much time I'm going to do. Well, to set the record straight, two and a half to three years is all that I'm looking at. I suggest that you get some right about yourself and keep in mind that I am not quick to forgive and I don't forget. . . . Do you think for a minute that I'm going to accept total responsibility for what transferred between us? We had a relationship. . . . Don't push me too far. I'm not no toy that you can pick up and play with as you see fit?" The second said: "No matter what these white people tell you, you can never tell you how I'm going to react if you take the stand on me. I'm not that type of guy to make threats. When I make up my mind to do something, I don't talk, I just do it. You're looking for a way out of this because you really don't want to go to court. That's why you want me to cop to it but there's in and out, in and out of every situation. . . . But the doctors told you how close you came—how close you came. . . . You know how close

appellant was trying to intimidate her to keep her from testifying against him.

DISCUSSION

I.-IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

V.

Appellant was found to be a habitual offender under section 667.7, subdivision (a): "Any person convicted of a felony in which the person inflicted great bodily injury as provided in Section 12022.7, or personally used force which was likely to produce great bodily injury, who has served two or more prior separate prison terms as defined in Section 667.5 for the crime of . . . rape by force, violence, or fear of immediate and unlawful bodily injury . . . [or] *robbery involving the use of force* or a deadly weapon . . . is a habitual offender . . . ." (Italics added.) This finding was based on alleged prior prison terms for the offenses of "rape by force" in violation of section 261, subdivision (2) and "robbery by force" in violation of section 211.[9] To prove the robbery involved force, the prosecution offered copies of the abstract of judgment showing a conviction of robbery in violation of section 211 (exhibit 2), a document showing commitment to the Youth Authority due to that conviction (exhibit 3), the transcript of the sentencing hearing (exhibit 4), the transcript of a change of plea hearing (exhibit 5), the

---

you came so you already know what time it is. This is your life we're talking about. This ain't no game. If you think for one minute that you can send me to prison and get with me when I get out and everything will be a bed of roses, think then[,] then think again."

Leach recognized appellant's handwriting on these letters and envelopes, the return addresses on which bore the name "Mr. S. Ramon Tuggle" and address of the jail at the Hall of Justice. Inspector Lloyd Cunningham, a forensic document examiner, compared three signatures known to be appellant's with the return address signatures on the two envelopes and concluded it was "highly probable" appellant had written his name on the envelopes. He was positive the same person had written both of the letters.

Katherine McDowell, an investigator with the San Francisco District Attorney's office, went to the county jail on November 22 and presented appellant with a court order requiring him to provide a handwriting sample. Appellant grabbed the forms, threw them down, said he was in enough trouble already and was not going to sign anything and left the room.

*See footnote, *ante*, page 147.

[9]Section 211 defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

information charging "robbery by means of force and fear" (exhibit 6), and a document showing the subsequent history of appellant's commitment to the Youth Authority, dishonorable discharge and commitment to the Department of Corrections (exhibit 7). The court found the robbery was a robbery by force within the meaning of section 667.7 because appellant had pled guilty to the offense as charged, robbery "by force and fear."

 Appellant contends this was an insufficient basis for concluding he had been convicted of a robbery by force because there is no difference between a robbery charged as robbery by force *and* fear and one charged as a robbery by force *or* fear. This contention is based on case law stating that where a statute enumerates acts in the disjunctive which together or separately constitute a criminal offense, it is necessary and proper to charge the commission of more than one of the acts in the conjunctive. (*In re Bushman* (1970) 1 Cal.3d 767, 775 [83 Cal.Rptr. 375, 463 P.2d 727], disapproved on other grounds in *People* v. *Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545]; *People* v. *Fritz* (1970) 11 Cal.App.3d 523, 526 [89 Cal.Rptr. 844].) These cases do not discuss the consequences of a guilty plea to charges enumerating several acts in the conjunctive, any of which could constitute the offense, but simply establish that a defendant so charged may be convicted upon evidence establishing only one of the acts. (*In re Bushman, supra,* 1 Cal.3d at pp. 774-775 [defendant charged with disturbing the peace by tumultuous and offensive conduct; proper to instruct jury it need find only one of these types of conduct]; *People* v. *Fritz, supra,* 11 Cal.App.3d at p. 526 [defendant charged with unlawful sale or furnishing of restricted dangerous drug; evidence showed only furnishing].)

That appellant theoretically could have been convicted of robbery by fear but not by force does not negate the effect of his guilty plea. A plea of guilty admits every element of the offense charged (*People* v. *Chadd* (1981) 28 Cal.3d 739, 748 [170 Cal.Rptr. 798, 621 P.2d 837]), all allegations, and factors comprising the charge contained in the pleading. (*Arenstein* v. *California State Bd. of Pharmacy* (1968) 265 Cal.App.2d 179, 190 [71 Cal.Rptr. 357]; *People* v. *Ward* (1953) 118 Cal.App.2d 604, 608 [258 P.2d 86].) The transcript of appellant's change of plea hearing demonstrates that he pled guilty to the offense of "violating section 211 of the California Penal Code, a felony, *as set forth in Count 1 of the information.*" By pleading guilty as charged, appellant necessarily admitted the force allegation and cannot now escape the consequences of that admission. (See *People* v. *Guerrero* (1988) 44 Cal.3d 343, 355-356 [243 Cal.Rptr. 688, 748 P.2d 1150].)[10]

---

[10]Appellant offers no persuasive reason he could not have clarified that he was not admitting a robbery by force. His suggestion that such an option was precluded by the principle that the offense had to be pled in the conjunctive is inconsistent with his recognition

We cannot agree with appellant's suggestion that the charge of force "and" fear was superfluous. Force is not a necessary element of the offense of robbery because the offense may be committed by fear alone. (§ 211.) A defendant may be bound to his or her admission of a charged crime, however, even though some of the allegations in the charging document were not elements of the offense. (*People* v. *Guerrero, supra*, 44 Cal.3d 343.) Thus, the Supreme Court in *Guerrero* found a defendant's plea of guilty to an accusatory pleading charging a residential burglary sufficient to prove the conviction was for burglary of a residence, as required for imposition of an enhancement under section 667, even though entry of a residence was not an element of the offense. (*Id.*, at pp. 345, 356; see *People* v. *Gomez* (1990) 219 Cal.App.3d 157, 159-162 [268 Cal.Rptr. 50]; *People* v. *Johnson* (1989) 208 Cal.App.3d 19, 26-28 [256 Cal.Rptr. 16].) The court reached this conclusion despite the fact that the prior conviction predated enactment of the statute which made the "residential" allegation critical. In response to the defendant's argument that it was unfair to allow enhancements to be predicated on matters which the defendant did not know the significance of at the time of the prior proceeding, the court stated: "The law regularly requires persons to suffer the consequences of their actions, even though they had not or could not foresee those consequences. . . . 'Of course the admission concerning the residential nature of the burglary was made without the knowledge that it could one day result in an enhanced sentence for later crimes. That is true, however, of every guilty plea to a charge of felony: it is seldom entered in anticipation of the commission of future crimes. Nevertheless if there are subsequent crimes, in most instances there will be enhanced punishment.' " (*Guerrero, supra*, 44 Cal.3d at pp. 355-356, quoting dis. opn. of Mosk, J., in *People* v. *Alfaro* (1986) 42 Cal.3d 627, 637, 638 [230 Cal.Rptr. 129, 724 P.2d 1154].) Accordingly, we cannot view the allegation in the present case that the robbery was committed by force "and" fear as superfluous even though section 667.7 was enacted after appellant pled guilty to the prior offense.

that the prosecutor could have amended the information to delete the force allegation. A court is not limited to accepting a guilty plea only to the offense charged but can accept a guilty plea to any reasonably related lesser offense. (*People* v. *West* (1970) 3 Cal.3d 595, 612-613 [91 Cal.Rptr. 385, 477 P.2d 409].)

Appellant's reliance on *People* v. *Brookins* (1989) 215 Cal.App.3d 1297 [264 Cal.Rptr. 240] is misplaced. There, a sentence under section 667.7 was vacated because there was insufficient evidence that the prior robbery conviction upon which it had been based was one "involving the use of force or a deadly weapon" as required by the statute. The defendant had pled guilty to robbery with the use of a firearm under section 12022.5, but this plea did not necessarily determine that the offense had involved use of a deadly weapon. While section 12022.5 applies whether or not the firearm is loaded, operable, fired or used as a bludgeon, a firearm is a deadly weapon only if loaded or used as a bludgeon. (215 Cal.App.3d at pp. 1303-1308.) In the present case, there is no similar absence of proof of the criteria required for imposition of the enhancement: appellant pled guilty to a charge of robbery by force and fear and "robbery by force" is one of the offenses enumerated in section 667.7.

The decision in *Guerrero* is admittedly somewhat at odds with cases such as *People* v. *Jackson* (1985) 37 Cal.3d 826 [210 Cal.Rptr. 623, 694 P.2d 736] and *People* v. *Crowson* (1983) 33 Cal.3d 623 [190 Cal.Rptr. 165, 660 P.2d 389]. In *Crowson,* a prior conviction of federal conspiracy was offered as the basis of an enhancement applicable to convictions from other jurisdictions for offenses including all the elements of the California felony. Unlike the case under California conspiracy law, commission of an overt act was not an element of the federal offense. Accordingly, even though the federal indictment to which the defendant pled guilty alleged overt acts, these allegations were viewed as "immaterial surplusage" which the defendant would have had no reason to contest and therefore could not be taken to have admitted. (33 Cal.3d at p. 634.) *Jackson* addressed the question whether a guilty plea to a charge of second degree burglary, including allegations of entry into a residence, was sufficient to prove the conviction was for "residential burglary" within the meaning of section 667 when entry into a residence was not an element of second degree burglary. *Jackson* concluded that the proof was sufficient for a conviction after the enactment of section 667 because the "residential" allegation would give the defendant notice the prosecution intended to prove the elements essential to the section 667 enhancement and the defendant would be aware admission of that allegation would expose him to additional punishment. (37 Cal.3d at pp. 834-835.) In the case of a conviction predating enactment of section 667, however, the record of conviction would not prove entry into a residence because allegations to that effect in the pleadings would be superfluous. (37 Cal.3d at p. 836.)

While *Guerrero* does not discuss the fact that the conviction in that case predated enactment of section 667, the decision was reached over a dissent which pointed out its inconsistency with the *Crowson* and *Jackson* principles. (44 Cal.3d at pp. 357-361, dis. opn. of Broussard, J.; see *People* v. *Gomez, supra,* 219 Cal.App.3d 157, 161; *People* v. *Johnson, supra,* 208 Cal.App.3d 19, 27-28.) Other residential burglary cases have routinely applied *Guerrero* to prior convictions predating enactment of section 667. (E.g., *People* v. *Gomez, supra,* 219 Cal.App.3d at pp. 160-162; *People* v. *Johnson, supra,* 208 Cal.App.3d at pp. 26-28; *People* v. *Harrell* (1989) 207 Cal.App.3d 1439, 1444 [255 Cal.Rptr. 750]; *People* v. *Smith* (1988) 206 Cal.App.3d 340, 343-345 [253 Cal.Rptr. 522]; *People* v. *Carr* (1988) 204 Cal.App.3d 774, 778 [251 Cal.Rptr. 458].) We find no meaningful reason to view appellant's admission that he committed a robbery by force and fear (when fear alone would be sufficient for conviction under the statute) as less binding than a defendant's admission that a burglary involved entry of a residence when such entry was not an element of the offense.

## VI.

Appellant was sentenced on count 1 as a habitual offender under section 667.7, subdivision (a)(1), which provides in pertinent part as follows: "A person who served two prior separate prison terms shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 20 years, or the term determined by the court pursuant to Section 1170 for the underlying conviction, including any enhancement applicable under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2, or any period prescribed by Section 190 or 3046, whichever is greatest." The trial court first imposed the life term for the attempted murder and three years for the great bodily injury enhancement, then found the allegation under section 667.7, subdivision (a)(1), true and stated that appellant's sentence would be life without possibility of parole for 20 years. The abstract of judgment shows appellant's sentence as life without possibility of parole for 20 years plus 3 years for the great bodily injury allegation. Appellant contests this indication that he is not eligible for parole for 23 years and the People concede the abstract of judgment must be clarified to show a minimum parole date of 20 years.

■ When a defendant comes within the terms of section 667.7, as appellant does here, the court must impose a life sentence and choose the greatest of the three possible parole eligibility dates enumerated in the statute. (*People* v. *Gonzalez* (1988) 201 Cal.App.3d 811, 815 [247 Cal.Rptr. 501].)[11] By the terms of the statute, the three options for parole eligibility dates are mutually exclusive. Sentences for enhancements such as section 12022.7 must be counted in calculating the term under the second option, which defines the minimum parole date by the sentence determined under section 1170. Thus, for example, when the sentence under section 1170 (including enhancements) exceeds 20 years, that sentence defines the proper minimum parole eligibility date. (*Ibid.*) The first and third options for parole eligibility dates, however, do not refer to enhancements and enhancements may not be added to the periods specified. When, as here, the first option applies, the parole eligibility date is simply 20 years. To the extent the judgment in this case suggests appellant is ineligible for parole for 23 years,

---

[11]The trial court's remarks indicate it mistakenly viewed section 667.7 as an enhancement which it had discretion to impose or not impose. The statute does not create an enhancement as defined in California Rules of Court, rule 405(c)—"an additional term of imprisonment added to the base term"—but rather provides for a term of imprisonment. (See *People* v. *Decker* (1988) 199 Cal.App.3d 694, 697 [245 Cal.Rptr. 40] [ § 667.51, subd. (c), provides term of imprisonment rather than enhancement].) Moreover, where a defendant comes within the terms of section 667.7, application of the statute is mandatory: A person meeting the definition in the statute "is a habitual offender and *shall* be punished as follows . . . ." (Italics added.)

it must be clarified to reflect a parole eligibility date of 20 years.[12] The abstract of judgment is therefore amended to specify a minimum eligible parole date of 20 years and, as so modified, affirmed.

Benson, J., and Peterson, J., concurred.

---

[12]As part of his argument that the court could not use the great bodily injury enhancement to lengthen his minimum term of imprisonment under section 667.7, appellant urges that section 669 does not apply to this case. We do not reach this issue as section 669 was not relied upon by the trial court and the People make no argument that it applies to this case.

In another attack on the use of the great bodily injury enhancement to lengthen his minimum parole date under 667.7, appellant urges that use of the great bodily injury finding both as an enhancement and to impose sentence under section 667.7 would violate the prohibition against dual use of facts. Having concluded that the judgment must be modified to reflect a minimum parole eligibility date of 20 years, we need not address this argument either. To the extent appellant is suggesting that the application of section 667.7 to this case precluded imposition of a great bodily injury enhancement, his contention must fail. The sentence under section 667.7 is an alternative to a sentencing scheme which imposes additional time for enhancements; enhancements are relevant in sentencing under section 667.7 only to the extent they must be included in the calculation of the term of imprisonment under section 1170 which must be considered as one of the parole eligibility date options. The enhancement was properly imposed as part of the initial calculation of appellant's sentence without reference to section 667.7 but has no practical effect on the time he will serve since sentence was in fact imposed under section 667.7.