Filed 5/30/13  P. v. Igwegbe CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>IFEANYI CHARLES IGWEGBE,<br><br>     Defendant and Appellant. | C070360<br><br>(Super. Ct. No. CRF100001212) |

Following a jury trial, defendant Ifeanyi Charles Igwegbe was convicted of driving under the influence of alcohol and with a blood alcohol level of 0.08 percent or higher, proximately causing bodily injury (Veh. Code, § 23153, subd. (a) --count 1; § 23153, subd. (b)--count 2; further undesignated section references are to the Vehicle Code).  The trial court sentenced defendant on count 1 to five years probation, 30 days in jail, and various restitution fees and fines.  The court stayed the sentence on count 2 pending successful completion of probation.

On appeal, defendant contends his convictions for counts 1 and 2 must be reversed due to ineffective assistance of counsel and juror misconduct.  We affirm the judgment.

1

FACTS AND PROCEEDINGS

At approximately 8:30 a.m. on May 25, 2010, defendant was driving his car northbound on Highway 99 from Sacramento to Rideout Hospital in Yuba City, California, where he worked as a medical doctor. He was traveling approximately 65-75 miles per hour in the fast lane in heavy traffic. Defendant's car swerved in and out of its lane several times before eventually crossing a grass median and striking an oncoming vehicle driven by Lilia Munoz in the southbound lane of Highway 99. After colliding with Munoz's car, defendant's car careened into an irrigation ditch on the southbound side of the highway.

The force of the impact caused Munoz's vehicle to spin several times before coming to rest on the right shoulder of the southbound lane. The left side of Munoz's car was crushed; the tire twisted under, the trunk smashed and the rear window completely shattered.

Several people who witnessed the accident stopped to assist the defendant and Munoz following the collision. Todd Dinwiddie, a former Sutter County reserve sheriff's deputy, had been traveling a few cars behind defendant and reached defendant while he was still sitting in his car in the irrigation ditch. While helping defendant out of his car, Dinwiddie smelled alcohol on defendant's body and breath. As a reserve sheriff, Dinwiddie had been trained in recognizing the signs and symptoms of alcohol consumption.

Two other individuals, Walter S. and Chad F., were driving together in the car directly behind defendant and saw him weaving between his lane and the median for several minutes before the accident. They also assisted defendant out of his car. Both Walter S. and Chad F. stayed with defendant for only a short time before going to check on Munoz. Neither Walter S. nor Chad F. smelled alcohol on defendant.

Elk Grove police officer Kurt Schoessler was on his way to work that morning when he came upon the accident. Officer Schoessler went to defendant's car in the irrigation ditch and first spoke with Dinwiddie who told him that defendant smelled like alcohol. When Officer Schoessler spoke with defendant, he smelled a "relatively strong" smell of alcohol on him. He also noticed defendant had bloodshot and watery eyes. As a police officer, Officer Schoessler had been trained in recognizing the symptoms of alcohol usage and being under the influence.

Officer Schoessler stayed with defendant until California Highway Patrol Officer Carlos Lejarza arrived on scene. Defendant told Officer Lejarza that he was the driver of the car in the irrigation ditch but stated he did not know how the accident happened. Officer Lejarza smelled alcohol on defendant's breath. Defendant told Officer Lejarza that he had had some wine after midnight. Defendant's eyes were red and watery and at times he was unsteady on his feet and had slurred speech.

Based on these symptoms, as well as the strong odor of alcohol emanating from defendant, Officer Lejarza administered defendant several field sobriety tests, which he performed poorly. As part of the field sobriety tests, Officer Lejarza administered a preliminary alcohol screening test at approximately 9:03 a.m., which required defendant to blow into a device that measures the amount of alcohol in an individual's breath. Defendant's breath test showed a 0.155 percent alcohol content.

Officer Lejarza placed defendant under arrest for causing injury while driving under the influence and transported defendant to Rideout Hospital, where he worked, for a blood draw. Defendant was upset that Officer Lejarza was taking him to that hospital and he was generally uncooperative. Because defendant was being combative, Officer Lejarza asked his supervisor, Sergeant Brad Hofflander, to meet them at Rideout Hospital. When Sergeant Hofflander arrived, he smelled alcohol emanating from the front seat of Officer Lejarza's patrol car where defendant was seated.

3

Lori Caramico was the emergency room nurse who drew defendant's blood, which resulted in a 0.13 percent blood alcohol reading. She had worked with defendant in passing at the hospital prior to the incident. When defendant was brought in for the blood draw he appeared different than Nurse Caramico had seen him before. He was argumentative, disheveled and had an unsteady gait. His eyes were bloodshot and his speech slurred. Based on her work as an emergency room nurse and her observations of hundreds of individuals under the influence of alcohol as well as her familiarity with defendant's appearance and professional conduct prior to that day, Nurse Caramico opined that defendant was under the influence.

Prior to trial, the prosecution sought to introduce Munoz's medical records from urgent care following the accident as well as medical records from the doctor still treating her for her injuries. Defense counsel, however, stipulated that Munoz had suffered injuries as a result of the collision and that those injuries were sufficient to satisfy the bodily injury element under section 23153. During trial Munoz testified that as a result of the collision she sustained injuries to the left side of her body, including her neck, shoulder, elbow, and leg. She also suffered seat belt marks across her chest. Nearly 14 months after the accident, Munoz testified she was still under a doctor's care for her shoulder and for the seat belt marks. She had also received various injections to treat her injuries.

Defendant testified in his own defense, claiming he only drank "one to one and a half glasses of six to eight ounces of wine" before midnight on May 24, 2010. He stated he was driving to work on the morning of May 25th when the hospital paged him. He reached over to the floorboard of the passenger seat trying to locate his cell phone so he could return the page. That is when he lost control of the car, crossed the median, and struck Munoz's car. Although defendant never told anyone he was injured in the collision or that he hit his head and defendant did not have any visible marks or bruising, defendant testified he hit his head in the accident. The defense also contended the odor

4

coming from defendant on the day of the accident was not alcohol but his cologne; defendant testified that several witnesses who testified to smelling alcohol were mistaken.

During trial, defense counsel sprayed defendant's cologne on counsel's own sleeve and asked three witnesses who had testified to smelling alcohol on defendant if the cologne smelled like alcohol. None of the witnesses stated it did. Defendant himself smelled the cologne and first testified that it did not smell like alcohol, but later clarified that it "kind of" and "somewhat" smelled like alcohol.

DISCUSSION

I

*Ineffective Assistance of Counsel*

Defendant contends his attorney was ineffective in two respects: (1) by stipulating that Munoz was injured in the collision and that her injuries were sufficient to meet the bodily injury element under subdivisions (a) and (b) of section 23153; and (2) by asking three witnesses who testified to smelling alcohol on defendant on the day of the accident whether defendant's cologne, which defense counsel sprayed on himself, smelled like alcohol. Defense counsel was not ineffective.

To establish ineffective assistance of counsel, defendant must show, by a preponderance of the evidence, that his counsel's representation fell below the standard of a competent advocate and a reasonable probability exists that, but for counsel's errors, the result would have been different. (*People v. Ledesma* (1987) 43 Cal.3d 171, 216-218 (*Ledesma*).) A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. (*People v. Bolin* (1998) 18 Cal.4th 297, 333.) In determining whether counsel's performance was deficient, we exercise deferential scrutiny and "assess the reasonableness of counsel's acts or omissions . . . under the circumstances as they stood at the time that counsel acted or failed to act." (*Ledesma,* at p. 216.) "Although deference is not abdication [citation], courts should not second-guess

5

reasonable, if difficult, tactical decisions in the harsh light of hindsight." (*People v. Scott* (1997) 15 Cal.4th 1188, 1212.)

We presume that counsel's conduct fell within the "wide range of reasonable professional assistance." (*People v. Maury* (2003) 30 Cal.4th 342, 389.) Our review is limited to the record on appeal and we must reject a claim of ineffective assistance "if the record sheds no light on why counsel acted or failed to act in the manner challenged unless (1) counsel was asked for and failed to provide a satisfactory explanation or (2) there simply could be no satisfactory explanation." (*People v. Burgener* (2003) 29 Cal.4th 833, 880.)

A. *Stipulation to Bodily Injuries*

Defendant first argues his trial counsel should not have stipulated that Munoz suffered bodily injuries as a result of the collision sufficient to meet the injury element under section 23153. The stipulation provides: "The People and the Defendant HEREBY STIPULATE that: LILLIA [*sic*] MUNOZ suffered injuries from the collision on May 25, 2010 in Sutter County. The injuries sustained by LILIA MUNOZ from the collision meet the injuries required for a violation of Vehicle Code section 23153(a) and 23153(b)." Defense counsel so stipulated without conceding that defendant was the one responsible for, or caused, the injury.

Defendant contends the stipulation essentially eviscerated a purported defense to the charges--that the accident did not cause Munoz's injuries. According to defendant, the "only plausible answer is that defense counsel was ignorant of the effects of the stipulation . . . ."

Conceding Munoz suffered bodily injuries from the collision does not necessarily demonstrate incompetence, however. (*People v. Lucas* (1995) 12 Cal.4th 415, 446 [proper for counsel to make tactical decision to stipulate to chain of custody even where technical omissions in custody chain exist].) To the contrary, the stipulation represented

a sound tactical decision to limit the jury's exposure to what otherwise would have been a detailed recitation of the injuries Munoz suffered which logically could have been highly prejudicial to defendant.

The prosecution sought to introduce at trial Munoz's medical records from her visits to urgent care shortly after the accident as well as her medical records documenting her ongoing treatment of injuries caused by the collision. As defense counsel pointed out when opposing introduction of the medical records, "whether the victim had a broken bone or a laceration, he or she is still considered injured for the purposes of the [*sic*] fulfilling the elements of a felony Driving Under the Influence charge." Thus, allowing detailed evidence describing each of Munoz's injuries during trial could have been highly inflammatory to the jury and prejudicial to defendant especially since, as trial counsel noted, case law requires a minimal showing of injury to establish the "bodily injury" element under section 23153. (See *People v. Dakin* (1988) 200 Cal.App.3d 1026, 1034-1035 [two cuts to forehead as well as severe headache and stiff neck resulting from 45-55 miles per hour collision which caused victim's head to shatter rear glass in pickup truck was sufficient to meet definition of bodily injury]; see also *People v. Lares* (1968) 261 Cal.App.2d 657, 658-660 [acute back strain to defendant's passenger causing him to be hospitalized for one night and to miss work for a couple of weeks was sufficient to meet the definition of bodily injury].)

In this case, counsel cannot be faulted for attempting to limit the evidence regarding the extent of Munoz's injuries. Stipulating that Munoz received injuries from the collision and that those injuries met the bodily injury element under section 23153 was reasonable. (*People v. Mendias* (1993) 17 Cal.App.4th 195, 206-207 [counsel's stipulation to fact that victim suffered great bodily injury as result of gunshot wound to leg did not constitute ineffective assistance of counsel].) Furthermore, under the circumstances presented here, candor with the jury that Munoz had been injured after being hit by a car traveling approximately 65-75 miles per hour indicates a legitimate trial

tactic, not incompetence. (*People v. Mayfield* (1993) 5 Cal.4th 142, 177 [it is not incompetence for attorney to concede client's guilt of second degree murder in a tactical attempt to avoid risk of death penalty for two first degree murder convictions]; see also *Mendias, supra,* 17 Cal.App.4th at pp. 206-207 [counsel's candor with jury does not equate to incompetence].)

Even if we assume the stipulation fell below a reasonable standard of performance for competent counsel, defendant's ineffective assistance claim still fails because he cannot show prejudice. In other words, defendant cannot establish that a reasonable probability exists that, but for counsel's stipulation, the result would have been different. (*Ledesma*, *supra,* 43 Cal.3d at pp. 216-218.) This is because Munoz actually testified to the bodily injuries she suffered as a result of being hit by defendant's car. Munoz testified she sustained injuries to the left side of her body, including her neck, shoulder, elbow, and leg. She also suffered seat belt marks across her chest. At the time of trial-- 14 months after the accident--Munoz was still under a doctor's care for her shoulder and for the seat belt marks. She had also received various injections to treat her injuries. Given the low threshold for establishing "bodily injury" within the meaning of section 23153, Munoz's testimony at trial was sufficient to satisfy the bodily injury element under the statute. Defendant, therefore, cannot establish that but for counsel's stipulation the prosecution would have been unable to show the bodily injury element beyond a reasonable doubt.

### B. Cologne Demonstration

Defendant next contends his trial counsel was ineffective for spraying defendant's cologne on his sleeve and asking three witnesses whether it smelled like alcohol. Throughout the trial, defendant implied the smell of alcohol that these witnesses testified was coming from defendant that day was actually his cologne. According to defendant, "[d]efense counsel's recklessness in conducting such a demonstration, without prior

proper planning and testing, was unduly prejudicial to [defendant's] interests."
Defendant argues that "[a] reasonable attorney would have at the very least done a trial run on such demonstration" or would have sprayed the cologne on defendant and waited a suitable amount of time, such as the length of time between the collision and when defendant sprayed the cologne on himself the morning of the accident, since cologne allegedly "dissipates" and the smell "changes" over time.

Although none of the witnesses agreed the cologne smelled like alcohol, such a demonstration does not fall outside the ambit of reasonable trial tactics. Had even one of these witnesses agreed the cologne smelled like alcohol, such testimony would have greatly benefited defendant and his theory that the smell they testified was alcohol was actually defendant's cologne. Simply because none of the witnesses so testified does not mean defense counsel's trial tactic amounted to ineffective assistance of counsel. (*Scott, supra,* 15 Cal.4th at pp. 1211-1212 [courts should not second-guess tactical decisions in the harsh light of hindsight].)

Even assuming the cologne demonstration fell below the reasonable standard of professional norms, once again defendant cannot establish that but for the cologne demonstration it is reasonably probable the verdict would have been more favorable to defendant. (*Ledesma, supra,* 43 Cal.3d at pp. 216-218.) The absence of prejudice is fatal to his ineffective assistance of counsel claim.

Defendant himself testified he drank wine the night before the accident even though he was on-call at the hospital. The day of the accident defendant performed poorly on the field sobriety tests and his preliminary alcohol screening registered a 0.155 percent at 9:03 a.m. Nearly an hour later at approximately 10:10 a.m., defendant's blood draw resulted in a reading of 0.13 percent blood alcohol. The prosecution's expert provided uncontroverted testimony that an average person eliminates approximately 0.02 percent blood alcohol per hour once a person stops consuming alcohol. Thus, as the prosecution's expert testified, the 0.13 percent blood draw is entirely consistent with

defendant's preliminary alcohol result of 0.155 percent--taken almost precisely one hour apart. The prosecution's expert further testified that whether an individual had been in an accident and hit his head, as defendant claimed, would not affect the results of a breath or blood alcohol test: the alcohol is either in an individual's system or it is not.

Furthermore, Nurse Caramico--who drew defendant's blood at Rideout Hospital-- actually worked with defendant and was familiar with how he looked and walked prior to the accident. Nurse Caramico testified to defendant's unsteady gait and disheveled appearance when he was brought in for his blood draw. She also testified defendant's eyes were bloodshot and his speech slurred--two characteristics she had never witnessed while working with defendant. In her opinion, having worked with him prior to the accident, Nurse Caramico testified she believed he was under the influence. Based on these facts, and the overwhelming evidence of being under the influence and having a blood alcohol level of at least 0.13 percent while driving, it is not reasonably probable that the cologne demonstration adversely impacted the verdict.

Defendant has not shown that trial counsel's injury stipulation or cologne demonstration fell below an objective standard of reasonableness. Even assuming he had, defendant fails to establish a reasonable probability that a more favorable determination would have resulted had counsel's purported errors not occurred. That is, on this record, defendant has not established a sufficient probability to undermine confidence in the outcome of the trial. (*Bolin, supra,* 18 Cal.4th at p. 333.)

II

*Juror Misconduct*

A criminal defendant has a constitutional right to a trial by unbiased, impartial jurors. (U.S. Const., 6th and 14th Amends; Cal. Const., art. 1, § 16; *People v. Nesler* (1997) 16 Cal.4th 561, 578 (*Nesler*).) " 'Because a defendant charged with a crime has a right to the unanimous verdict of 12 impartial jurors [citation], it is settled that a

conviction cannot stand if even a single juror has been improperly influenced.' " (*Nesler, at* p. 578.)

A jury's verdict must be based solely upon the evidence presented at trial. (*Nesler, supra,* 16 Cal.4th at p. 578.) Juror misconduct, such as receiving information about a party or the case that was not part of the evidence presented at trial, raises a rebuttable presumption of prejudice. (*People v. Dykes* (2009) 46 Cal.4th 731, 809.) The presumption of prejudice may be rebutted by an affirmative evidentiary showing that prejudice does not exist or " ' "by a reviewing court's examination of the entire record to determine whether there is a reasonable probability of actual harm to the complaining party." ' " (*People v. Vigil* (2011) 191 Cal.App.4th 1474, 1487.)

Defendant contends juror misconduct tainted the verdict requiring a new trial. According to defendant, Juror No. 6's written request to understand which portion of Dinwiddie's testimony the court struck concerning the preliminary alcohol screening device administered by Officer Lejarza to defendant constitutes misconduct from which the court should infer Juror No. 6 disregarded other instructions and likely influenced other jurors to do the same.

During trial, Dinwiddie testified he observed Officer Lejarza giving the preliminary alcohol screening device to defendant. Dinwiddie testified that when defendant "was blowing into the device, he wasn't pressing his lips firmly on the mouthpiece, and he was blowing around the mouthpiece. So he wasn't putting enough air into the mouthpiece for it to trigger." When the prosecutor asked Dinwiddie if he had training using such a device he responded: "Yes I have. [¶] He was also not continuing --" Defense counsel interjected and moved to strike because no question was pending. The trial court sustained. Thus, Dinwiddie's testimony that "He was also not continuing--" was stricken by the trial court.

After Dinwiddie was excused and before the next witness was called, Juror No. 6 sent a written request to the judge asking, among other things, "I request to understand

11

what testimony was struck in regard to the field sobriety test blowing into mouthpiece. I need to know prior to deliberation." The trial court consulted with both counsel and each agreed the court should re-read the information delineating the crimes with which defendant had been charged and that the court should generally remind the jury about the instruction regarding dealing with stricken testimony.

The trial court subsequently admonished the jury that "if any answer is given to a question and then the Court then grants a motion to strike out the answer, you are then to completely disregard the answer and you must not consider it for any purpose. You are to treat it as though you had never heard of it." The trial court did not re-read the stricken testimony. Prior to deliberations, the trial court again instructed the jury to disregard testimony ordered stricken from the record.

Here, Juror No. 6 did not engage in misconduct. Contrary to defendant's argument, Juror No. 6's request does not show an "apparent lack of willingness" to follow the court's instruction. Instead, Juror No. 6's written request to understand which portion of Dinwiddie's testimony had been stricken shows he was trying to determine precisely what testimony he should disregard--as *required* by the court's instruction regarding stricken testimony. Jurors are presumed to follow the instructions given by a court. (*People v. McLain* (1988) 46 Cal.3d 97, 119.) We find no reason to believe Juror No. 6 failed to discharge his duty or influenced other jurors from discharging theirs. Because no juror misconduct occurred, the verdict is constitutionally sound.

DISPOSITION

The judgment is affirmed.

      HULL      , J.

We concur:

      BLEASE      , Acting P. J.

      MAURO      , J.